UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY RAMON MCALISTER, 491966,<br><br>Plaintiff,<br><br>v.<br><br>SAN FRANCISCO POLICE DEP'T, et al.,<br><br>Defendant(s). | Case No. 16-cv-06120-CRB (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 16) |

Plaintiff Troy Ramon McAlister, a pretrial detainee at the San Francisco County Jail (SFCJ), filed a pro se First Amended Complaint (FAC) for damages under 42 U.S.C. § 1983 alleging various wrongdoing at the San Francisco Mission Street police station, SFCJ and San Francisco General Hospital (SFGH). Per order filed on April 7, 2017, the court screened the FAC pursuant to 28 U.S.C. § 1915A and found that plaintiff's allegations that San Francisco Police Department (SFPD) officers Leach, Hawes and Sutton used excessive force while booking him into the Mission Street police station state a cognizable claim under § 1983 for violation of the Fourth Amendment against these three officers. The court then ordered the three officers served and dismissed all other allegations and defendants.

The three officer defendants (defendants) move for summary judgment on the ground that there are no material facts in dispute and that they are entitled to judgment as a matter of law. They also claim that they are entitled to qualified immunity. Plaintiff has filed an opposition, and defendants have filed a reply.

For the reasons set forth below, the motion will be granted because defendants are entitled to qualified immunity under the circumstances of this case.

**FACTUAL BACKGROUND**

Defendants and plaintiff have different—although not completely contradictory—accounts of the facts at issue. According to defendants, plaintiff was arrested on the evening of July 27, 2015, on suspicion of robbery with the use of a gun. Leach Decl. (ECF No. 16-5) ¶ 4. Defendant Leach transported plaintiff to the Mission Street police station for further investigation. Id. ¶ 5. Upon arrival at the station, plaintiff "suddenly became combative" and "had to be restrained." Hawes Decl. (ECF No. 16-4) ¶ 6. While plaintiff was restrained, defendant Hawes attempted to obtain plaintiff's fingerprint with a remote fingerprint scanner but was unsuccessful because plaintiff damaged it. Id. ¶ 7, Ex. A. At one point, plaintiff "started yelling that he needed an ambulance and fell to the ground." Leach Decl. ¶ 7. Defendant Leach, assisted by defendant Hawes and defendant Sutton, moved plaintiff to a bench and "double handcuffed" him to the bench. Id. ¶¶ 8, 10. During this process, plaintiff's right hand was released from the handcuffs, at which point he "began violently thrashing" and "struck" defendant Leach on the left side of his face, causing "pain, swelling, a laceration, and a bruise." Id. ¶ 9, Ex. B. Once handcuffed to the bench, plaintiff "continued to violently thrash his legs and hit his head on the bench." Id. ¶ 10. Accordingly, defendants "did [their] best" to prevent plaintiff from hurting himself while awaiting the arrival of San Francisco Fire Department paramedics. Id. ¶ 11. After the paramedics arrived, plaintiff was transported to SFGH, where he was treated for methamphetamine intoxication. See Collins Decl. (ECF No. 16-2), Ex. A at 000010. Defendants had no further contact with plaintiff after he left the Mission Street station. Leach Decl. ¶ 16; Hawes Decl. ¶ 12; Sutton Decl. (ECF No. 16-3) ¶ 7.

On August 5, 2015, plaintiff complained for the first time of pain and numbness in his right wrist. Collins Decl., Ex. B at 000010. He told medical staff at SFCJ that his injury was the result of "being handcuffed tightly for [a] long period of time." Id.

Plaintiff admits that he was under the influence of methamphetamine during the incident at issue, and does not dispute that use of force was necessary. See Opp'n (ECF No. 21) at 3; Pl.'s Decl. (ECF No. 21-1) ¶ 7. His account of the facts instead adds color to suggest that defendants used more force than was necessary under the circumstances. According to plaintiff, once inside

2

the Mission Street station, he was "slammed on [his] right side . . . pinned to the floor, kneed in [his] back, and handcuffed extremely tight." Pl.'s Decl. ¶ 5. He "was then slammed again, this time on the bench," and double handcuffed to the bench, where his right wrist was injured. Id. ¶ 6.

Plaintiff adds that his injury was so severe that it still has not healed, and there are signs of nerve damage. See id. ¶¶ 10–11, Ex. D.

## DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the case under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The party moving for summary judgment—in this case, defendants—bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On an issue where it will have the burden of proof at trial, the moving party must affirmatively show that no reasonable jury could find other than in the moving party's favor. But on an issue where the opposing party has the burden of proof at trial—as is the case here—the moving party need only point out that "there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. Anderson, 477 U.S. at 249. The nonmoving party does this by citing to specific parts of the materials in the record or by showing that the materials cited by the moving party do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c). If the nonmoving party fails to show that there is a genuine dispute of material fact, the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 323.

/

In determining whether there is a genuine dispute of material fact, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Anderson, 477 U.S. at 255. Here, that party is plaintiff. But if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted in the moving party's favor. Id. at 249–50.

**B.      CLAIM AND ANALYSIS**

The crux of plaintiff's Fourth Amendment excessive force claim is that defendants used unreasonable force while booking him at the Mission Street police station. Under Graham v. Connor, 490 U.S. 386 (1989), the standard for determining excessive force is whether the officers' actions were "objectively reasonable" in light of the facts and circumstances confronting them. Id. at 397. This inquiry requires "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)). The three main factors to consider in this "careful balancing" are (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest. Id. Other factors to consider include the "quantum of force" used, the availability of less intrusive alternatives, and the plaintiff's mental and emotional state. Luchtel v. Hagemann, 623 F.3d 975, 980 (9th Cir. 2010). But the most important factor in this analysis is whether the suspect posed an immediate threat to the safety of the officers or others. Isayeva v. Sacramento Sheriff's Dep't, 872 F.3d 938, 947 (9th Cir. 2017).

Defendants argue that they are entitled to summary judgment and qualified immunity from plaintiff's Fourth Amendment excessive force claim. Under Saucier v. Katz, 533 U.S. 194 (2001), the court must undertake a two-step analysis when a defendant asserts qualified immunity in a motion for summary judgment. The court first faces "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201. If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.

4

If the court determines that the conduct did violate a constitutional right, it then moves to the second step and asks "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201–02. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Brosseau v. Haugen, 543 U.S. 194, 198 (2004). Qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. Id.; Saucier, 533 U.S. at 205–06. If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." Id. at 205.

Although the Saucier sequence is often appropriate and beneficial, it is not mandatory. A court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. Pearson v. Callahan, 555 U.S. 223, 236 (2009). Here, the court is satisfied that defendants are entitled to qualified immunity because, under the circumstances of this case, their conduct did not violate a "clearly established" right such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201–02.

Under either defendants' or plaintiff's account of the facts, it cannot be said that it would be clear to a reasonable officer that the force used by defendants to restrain plaintiff at the Mission Street station was unlawful. According to both sides, plaintiff was arrested on suspicion of robbing a store with the use of a gun. Plaintiff admits he was under the influence of methamphetamine at the time of his arrest, and does not dispute that use of force to restrain him at the station was necessary. The uncontroverted evidence in the record in fact shows that once at the station, plaintiff became combative and had to be restrained. He resisted, damaged a finger scanner and threw himself to the ground. When defendants first attempted to handcuff plaintiff to a bench, plaintiff "began violently thrashing" and "struck" defendant Leach on the face. Leach Decl. ¶ 9. And after defendants finally succeeded in handcuffing plaintiff to the bench, plaintiff "continued to violently thrash his legs and hit his head on the bench." Id. ¶ 10. Defendants then did their best to prevent plaintiff from hurting himself until paramedics arrived. Under these

5

circumstances, a reasonable officer could have believed that using force to handcuff plaintiff to a bench to prevent him from hurting himself and others, and trying to prevent plaintiff from hurting himself once handcuffed until paramedics arrived, was lawful. See Saucier, 533 U.S. at 201–02. Plaintiff's contention that defendants used more force than was necessary does not compel a different conclusion. None of the slamming, kneeing or tight handcuffing plaintiff suggests was more than necessary to restrain him was so extreme or uncalled for that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. Defendants are entitled to summary judgment based on qualified immunity.

      Plaintiff's reliance on various excessive force cases where the court of appeals denied the officer's claims of qualified immunity is unpersuasive because the cases are distinguishable. In Wall v. County of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004), the court found that the officer in that case violated a clearly established constitutional right because he not only "used excessive force in making the arrest" but also "continu[ed] the restraint by handcuffs that hurt and damaged [the plaintiff's] wrist." Wall, the plaintiff, was complying with the officer's order to leave the scene when the officer "suddenly and without warning" grabbed Wall by his wrist and bent and twisted his arm, handcuffed Wall's hands "extremely tight" behind his back, picked Wall up by his handcuffed arms, threw Wall "upside down" and head first into a patrol car, and left Wall waiting in the patrol car for about twenty minutes. Id. at 1109–10. But the undisputed facts make clear that the circumstances faced by defendants in this case were substantially different: Plaintiff was under the influence of methamphetamine and became combative and had to be restrained; he resisted, damaged a finger scanner and "thrashed" around and hit an officer in the face; and even after he was handcuffed, he continued to thrash around hitting his head. And unlike in Wall, there is no indication whatsoever that defendants in this case used force after plaintiff complied with their orders or stopped resisting. Unlike in Wall, defendants in this case reasonably could have believed that using force to handcuff plaintiff to a bench to prevent him from hurting himself and others, and trying to prevent plaintiff from hurting himself once handcuffed until paramedics arrived, was lawful under the circumstances. See Saucier, 533 U.S. at 201–02.

/

6

Alexander v. County of Los Angeles, 64 F.3d 1315 (9th Cir. 1995), and LaLonde v. County of Riverside, 204 F.3d 947 (9th Cir. 2000), are similarly distinguishable. In Alexander, the court concluded that the officers were not entitled to qualified immunity for use of excessive force because they left the plaintiff in tight handcuffs and refused to loosen them for thirty-five to forty minutes, despite being told that the plaintiff was ill and a dialysis patient. 64 F.3d at 1323. In LaLonde, the officers grabbed LaLonde by the ponytail, knocked him backwards to the ground, and sprayed pepper spray in his face. 204 F.3d at 952. And despite LaLonde having "already surrendered" and being "under control," the officers left him handcuffed on a couch for twenty to thirty minutes with pepper spray burning his face. Id. at 952, 960. But it is undisputed that in this case plaintiff was not under control after he was handcuffed to the bench. He continued to violently thrash his legs and hit his head on the bench, to which defendants responded by doing their best to prevent him from hurting himself until paramedics arrived. Unlike in Alexander and LaLonde, defendants in this case reasonably could have believed that keeping plaintiff handcuffed to the bench while trying to prevent him from hurting himself until paramedics arrived was lawful under the circumstances. See Saucier, 533 U.S. at 201-02.[1]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (ECF No. 16) is GRANTED.

**IT IS SO ORDERED.**

Dated: March 16, 2018

CHARLES R. BREYER
United States District Judge

---

[1] Plaintiff's reliance on several out-of-circuit cases is unpersuasive because the cases are inapposite or distinguishable. Cf. Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001) (finding that handcuffing too tightly, without more, does not amount to excessive force).

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY RAMON MCALISTER,<br><br>    Plaintiff,<br><br>    v.<br><br>SAN FRANCISCO POLICE DEPARTMENT, et al.,<br><br>    Defendants. | Case No. 3:16-cv-06120-CRB<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 16, 2018, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Troy Ramon McAlister ID: #491966
San Francisco County Jail #5
1 Moreland Drvie
San Bruno, CA 94066

Dated: March 16, 2018

                                              Susan Y. Soong
                                              Clerk, United States District Court

                                              By:_____
                                              Lashanda Scott, Deputy Clerk to the
                                              Honorable CHARLES R. BREYER